IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| NEW GENERATION CHRISTIAN CHURCH,<br><br>        Plaintiff,<br><br>v.<br><br>ROCKDALE COUNTY, GEORGIA,<br><br>        Defendant. | CIVIL ACTION NO.<br><br>1:12-cv-02138-JEC |

## ORDER & OPINION

This matter is before the Court on plaintiff's motion to amend the pleadings [38] and defendant's motion to amend the pleadings [41]. The Court has reviewed the briefs and for the reasons explained herein **GRANTS** plaintiff's motion to amend the pleadings [38] and **DENIES** defendant's motion to amend the pleadings [41].

## BACKGROUND

New Generation Christian Church ("plaintiff") filed suit against Rockdale County, Georgia ("defendant") for violations of the Religious Land Use and Institutionalized Persons Act, 42 U.S.C. §§ 2000cc – 2000cc-5; the Fourteenth Amendment; and the First Amendment. (*See* Compl. [1] at ¶¶ 62-140.) Plaintiff alleges that defendant's zoning code has illegally and unconstitutionally compromised its free religious exercise by, in various ways, preventing plaintiff from renting real estate for conducting religious services.

For purposes of the motions under consideration, the full background of the dispute need not be discussed. The relevant facts for each motion are discussed separately.

I. **BACKGROUND PERTINENT TO PLAINTIFF'S MOTION**

This suit was initiated by Michael Lewis ("Lewis") under the name "New Generation Christian Church," the church of which he is pastor and proprietor. The complaint alleged that New Generation Christian Church is incorporated in Georgia. (Compl. [1] at ¶ 14.) In its answer, defendant stated that it lacked information as to the truth of plaintiff's self-characterization. (Answer [14] at ¶ 14.) In the course of discovery, Lewis revealed that his church was not in fact incorporated under the name "New Generation Christian Church." (Lewis Dep. [32-3] at 16-18.) Instead, he had at one time led a church incorporated in Georgia as "New Generation True Holiness Church," but ceased conducting religious services under that name in 2010, and had since that time been conducting religious services under the name "New Generation Christian Church." (*Id.*)

Plaintiff contends that "New Generation Christian Church," the name under which this action was initiated, is simply the "popular name" of the church incorporated as "New Generation True Holiness Church." (Mot. to Correct Misnomer [38] at ¶ 1.) Thus, they are not different entities. Defendant differs, and points to Lewis' deposition testimony:

2

```
Q.   Is the church incorporated?
A.   Yes, it is.
Q.   Under what name?
A.   I think it is under New Generation True Holiness
     Church.
Q.   That's different from New Generation Christian Church.
A.   Yes.
....
Q.   Now, as a separate entity New Generation Christian
     Church, which is completely yours, is the one that
     operates.
A.   Yes.
....
Q.   But it was your intent when you started New Generation
     Christian Church to be completely separate from New
     Generation True Holiness Church.
A.   Absolutely.
Q.   That's what you meant when you resigned from --
A.   Yes.
```

(Lewis Dep. [32-3] at 16-18.)  Defendant contends that this testimony supports the view that there are two different churches, not one church with different names.

Defendant filed a motion for summary judgment, arguing that it was entitled to summary judgment, among other reasons, because "'New Generation Christian Church' is the wrong entity to bring this claim because it is incorporated under a different name." (Def.'s Mot. for Summ. J. [34-2] at 2.)  Plaintiff contested this, but then filed its motion to amend the pleadings to change the name "New Generation Christian Church" to "New Generation True Holiness Church." (Pl.'s Resp. to Def.'s Mot. for Summ. J. [36] at 7-10; Pl.'s Mot. to Amend [38] at 1.)

3

## II.   BACKGROUND PERTINENT TO DEFENDANT'S MOTION

In February, 2011, plaintiff leased real property located at 3020 NW Edwards Drive, Conyers, Georgia ("Edwards Property"). (Compl. [1] at ¶ 22.)  That property is zoned as "Mixed-Use Development District ("MxD").  (*Id.* at ¶ 23.)  Defendant permits places of worship to operate in a MxD zone only with a special use permit.  (*Id.* at ¶¶ 24-25.)  When plaintiff applied to defendant for a meter so that heat could be provided to the building, its request was denied.  (*Id.* at ¶¶ 28-29.)  Plaintiff alleged in its complaint that defendant "denied [plaintiff's] request, citing the Zoning Code's three-acre limit on churches: 'A place of worship shall be located on a minimum of three acres dedicated solely for the place of worship or on its own recorded lot of at least three acres in size . . . .'" (*Id.* at ¶ 29)(*quoting* Rockdale County Code Art. III § 218.-12(ccc)(2)).  The three-acre rule is distinct and separate from the MxD special use permit.

In defendant's answer, it admitted the allegations in paragraph 29 of plaintiff's complaint.  (Answer [14] at ¶ 29.)  Later, in the course of discovery, defendant deposed Lewis, who testified that the meter request was rejected on the basis of "zoning issues," but that he "had no idea of the 3 acreage zoning issues or anything at that point in time."  (Lewis Dep. [32-3] at 34, 41.)  On this basis, defendant filed the present motion to amend its answer to paragraph

4

29 of the complaint, for "[i]f [defendant] had denied the meter request because of the three acre requirement, as [plaintiff] alleges, then Pastor Lewis would have known about the requirement after [plaintiff] vacated the Edwards property. Because he did not, there is no factual support for the allegation in paragraph 29." (Def.'s Mot. to Amend [41] at 3.)  The amended answer would deny plaintiff's factual allegation in paragraph 29, reopening the issue of the grounds upon which plaintiff was denied a meter.

## DISCUSSION

### I. LEGAL STANDARD

The Federal Rules allow that, after the period permitting amendment as a matter of course, "a party may amend its pleading only with the opposing party's written consent or the court's leave.  The court should freely give leave when justice so requires."  FED. R. CIV. P. 15(a)(2).

> In the absence of any apparent or declared reason--such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.--the leave sought should, as the rules require, be 'freely given.'

*Foman v. Davis*, 371 U.S. 178, 182 (1962).  However, where the motion to amend is filed after the deadline of district court's scheduling order, Rule 16(b) imposes a further "good cause" requirement on the party seeking to amend.  FED. R. CIV. P. 16(b)(4) ("A schedule may be

5

modified only for good cause and with the judge's consent."); *Sosa v. Airprint Sys., Inc.*, 133 F.3d 1417, 1419 (11th Cir. 1998)("If we considered only Rule 15(a) without regard to Rule 16(b), we would render scheduling orders meaningless and effectively would read Rule 16(b) and its good cause requirement out of the Federal Rules of Civil Procedure.")[1]  Good cause requires that the party seeking amendment was diligent.  *Sosa*, 133 F.3d at 1418 (The good cause standard "precludes modification [of the scheduling order] unless the schedule cannot be met despite the diligence of the party seeking the extension.")(internal quotation marks omitted).  The *Sosa* court looked to both when the information became available to the party seeking amendment, and how promptly the party sought amendment once it possessed the information.  *Id.* at 1419.

Amendments adding claims or defenses and amendments adding or substituting parties have a further burden.  Once a court determines that Rule 15(a) and Rule 16(b) are satisfied, it must then decide whether such amendments "relate back" to the original pleading to be amended, thereby avoiding any potential expiration of the statute of limitations period.  Rule 15(c) countenances amendments that "change[] the party or the naming of the party against whom a claim

---

[1] After granting a joint motion for an extension of time to complete discovery, the scheduling order's deadline was May 7, 2013. (*See* Proposed Order [26-1] (approved by minute entry).)

is asserted," and permits, if certain requirements are met, such amendments to relate back to the date of the original pleading. FED. R. CIV. P. 15(c)(1)(C). The requirements are that the opposing party "(I) received such notice of the action that it will not be prejudiced in defending on the merits; and (ii) knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity." FED. R. CIV. P. 15(c)(1)(C)(I)-(ii).

Rule 15(c) does not, however, specifically address situations where the moving party seeks to amend its own name. The Eleventh Circuit, following other circuits, has held that the "extension of Rule 15(c)(3) to amendments involving plaintiffs rests on solid ground." *Cliff v. Payco Gen. Am. Credits, Inc.*, 363 F.3d 1113, 1132 (11th Cir. 2004).[2] *See also Makro Capital of Am., Inc. v. UBS AG*, 543 F.3d 1254, 1259 (11th Cir. 2008)("Though [Rule 15(c)(1)(C)] technically references amendments that change the parties against whom claims are asserted, we have previously applied it to situations in which new plaintiffs were added.") In reaching this conclusion, the *Cliff* court cited the advisory committee's note, which states:

> The relation back of amendments changing plaintiffs is not expressly treated in revised Rule 15(c) since the problem

---

[2] Rule 15(c)(3) is a previous version of Rule 15(c)(1)(C). It differs only slightly in wording; the differences are not substantive.

7

> is generally easier. Again the chief consideration of policy is that of the statute of limitations, and the attitude taken in revised Rule 15(c) toward change of defendants extends by analogy to amendments changing plaintiffs.

FED. R. CIV. P. 15 advisory committee's note to the 1966 Amendment. The Rule 15(c)(1)(C) requirements of notice and knowledge apply in situations where the plaintiff seeks to amend to change plaintiffs or correct a misnomer in the plaintiff's name. *Makro Capital*, 543 F.3d at 1259-60.

When it comes to joining or substituting new parties, courts have further obligations and options beyond Rule 15. Rule 17 addresses the parties' capacity to sue and be sued, and states that where the real party in interest has not been named,

> [t]he court may not dismiss an action for failure to prosecute in the name of the real party in interest until, after an objection, a reasonable time has been allowed for the real party in interest to ratify, join, or be substituted into the action. After ratification, joinder, or substitution, the action proceeds as if it had been originally commenced by the real party in interest.

FED. R. CIV. P. 17(a)(3). This ratification, joinder, or substitution of the real party in interest may be accomplished through Rule 19, which states that "[i]f a person has not been joined as required, the court must order that the person be made a party." FED. R. CIV. P. 19(a)(2); *see also* FED. R. CIV. P. 21 ("On motion or on its own, the court may at any time, on just terms, add or drop a party.") "Rule 19 and Rule 21 . . . provide wide discretion for the District Court

8

AO 72A
(Rev.8/82)

to order joinder of parties, but that joinder must be accomplished with the requirements of due process in mind." *Moore v. Knowles*, 482 F.2d 1069, 1075 (5th Cir. 1973)(discussing older version of the Federal Rules.)[3]

## II. PLAINTIFF'S MOTION

Defendant contends that plaintiff has not shown good cause as to why it was unable to correct the error in its name prior to the close of discovery, and thus that Rule 16(b) is not satisfied. Defendant further contends that filing suit as New Generation Christian Church could not "have put [defendant] on notice of the name of a legal entity that [p]laintiff is now attempting to claim." (Def.'s Resp. [42] at 5-6.) In support, defendant provides the results of an internet search for "New Generation" on the Georgia Secretary of State's website. (*See* Begnaud Aff. [42-1] at ¶ 2.) The search produced 111 results, including numerous religious entities. (*Id.*) Because of this, defendant believes that even if plaintiff has satisfied the Rule 16(b) good cause requirement, it has not satisfied the Rule 15(c) requirement that defendant "received such notice of the action that it will not be prejudiced in defending on the merits." FED. R. CIV. P. 15(c)(1)(C)(I).

---

[3] Decisions of the former Fifth Circuit rendered prior to October 1, 1981 are binding precedent in the Eleventh Circuit. *Bonner v. City of Prichard, Ala.*, 661 F.2d 1206, 1207 (11th Cir. 1981).

9

In plaintiff's motion to amend, it did not address the good cause requirement of Rule 16(b). After defendant raised that issue in its response, plaintiff's reply brief argued that the requirement was met because defendant "has known at all times throughout this lawsuit which church is at issue, and would not be prejudiced by the amendment." (Pl.'s Reply [48] at 5.) Further, "[p]laintiff promptly moved to correct the misnomer as soon as the mistake was brought to [its] attention." (*Id.* at 6.) Plaintiff does not address the central issue, which is the fact that the information about its corporate name was certainly available to it all along. It would have taken only minimal diligence to have corrected this error before the scheduling order's deadline, or indeed even before filing the case. It thus seems that, at best, plaintiff has satisfied only part of the good cause requirement of Rule 16(b), in promptly seeking to correct the misnomer after defendant brought it to plaintiff's attention. Although an amendment such as this would normally fall well within the liberal standards of Rule 15(a), the Eleventh Circuit is quite clear that, where the scheduling order's deadline has passed, Rule 16(b) must be satisfied before the court may consider Rule 15(a). See *Sosa*, 133 F.3d at 1419.

However, as discussed, the Court has other options under the Federal Rules for adding or substituting parties. It may exercise its discretion under Rules 19 and 21 to join New Generation True

10

Holiness Church and drop New Generation Christian Church. The Court elects to do so. The Court notes that the record in this case indicates that defendants clearly were aware, protestations to the contrary aside, of the entity it was dealing with during these proceedings. Albeit for slightly different reasons, it **GRANTS** plaintiff's motion to amend and **ORDERS** New Generation True Holiness Church to be joined as a new plaintiff, and **ORDERS** New Generation Christian Church to be dismissed as plaintiff.[4]

### III. DEFENDANT'S MOTION

Defendant, like plaintiff, must satisfy the Rule 16(b) good cause requirement before it may be permitted to amend its pleadings pursuant to Rule 15. To show good cause under Rule 16(b), the party seeking to amend must show that it was diligent in seeking the information that is the subject of the amendment. Defendant takes the opposite approach, stating that "[a]t the time [defendant] filed its answer, it took [plaintiff] at its word that the request [for the meter] was denied on account of the three acre requirement." (Def.'s

---

[4] This raises an issue not addressed by either party in their briefs. Although plaintiff now seeks to proceed as "New Generation True Holiness Church," rather than "New Generation Christian Church," it is not clear that the newly-named plaintiff suffered the injuries alleged in plaintiff's complaint. In his deposition, Lewis sometimes characterizes the difference as simply one of names, but elsewhere insists that they are distinct entities separated by doctrinal differences. (*See* Lewis Dep. [32-3] at 16-18.) This issue, however, is beyond the scope of the present Order.

11

Mot. to Amend [41] at 2-3.)  Defendant provides no explanation for why it took plaintiff's complaint at its word, rather than doing its own investigation of the facts.  The reason for denying the meter to plaintiff was, almost certainly, information available to defendant at the time that it submitted its answer.  If it was not available, defendant had the duty to state that it lacked that information, rather than accepting plaintiff's statement of fact.  *See* FED. R. CIV. P. 8(b)(5) ("A party that lacks knowledge or information sufficient to form a belief about the truth of an allegation must so state, and the statement has the effect of a denial.")[5]

Defendant has provided no showing of its diligence, only its lack of diligence.  This cannot satisfy the good cause requirement of Rule 16(b).  More importantly, plaintiff would unfairly suffer prejudice if this amendment were allowed.  As plaintiff correctly notes, it was the defendant, not plaintiff, who solely held knowledge of the true reason why defendant denied the requested property meter.  When defendant's Answer admitted that defendant denied the meter because of the three-acre requirement, plaintiff understandably structured its litigation strategy and discovery requests under the

---

[5] Defendant does not suggest that it might have answered paragraph 29 of the complaint differently if plaintiff had filed this action under the name "New Generation True Holiness Church" rather than "New Generation Christian Church."  Indeed, defendant's excuse--that it did not investigate the facts--would seem to preclude that argument.

assumption that defendant did not contest this fact. To the contrary, defendant admitted that this was its reason. Were defendant permitted to now take back that admission, discovery would have to be reopened and summary judgment motions would have to be rebriefed: all to the great detriment of plaintiff. Given defendant's lack of diligence, this prejudice should not be visited on plaintiff.

Accordingly, the Court **DENIES** defendant's motion to amend [41].

## CONCLUSION

The Court **GRANTS** plaintiff's motion to correct a misnomer [38] and **DENIES** defendant's motion to amend [41]. The Court further **ORDERS** that New Generation True Holiness Church be **JOINED** as plaintiff, and **ORDERS** that New Generation Christian Church be **DISMISSED** as plaintiff. The action proceeds as if New Generation True Holiness Church had originally commenced it. The parties' motions for summary judgment ([32, 34]) remain under advisement.

SO ORDERED, this 27th day of March, 2014.

/s/ Julie E. Carnes
JULIE E. CARNES
CHIEF UNITED STATES DISTRICT JUDGE

13